IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SUSAN B. SARGENT | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-24-0795 |
| FRANKLIN SQUARE HOSPITAL CENTER, INC., d/b/a MEDSTAR FRANKLIN SQUARE MEDICAL CENTER, | * * * | |
| *Defendant*. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Susan B. Sargent ("Plaintiff" or "Sargent") brings this employment discrimination action in a two-count Corrected Complaint[1] against her former employer, Franklin Square Hospital Center d/b/a MedStar Franklin Square Medical ("Franklin Square" or "Defendant").[2]  (ECF No. 4.)  Sargent alleges that while she worked at Franklin Square between December 2020 and March 2023, her supervisors discriminated against her based on her age.  (*Id.*)  Specifically, Sargent alleges age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, *et seq.* (Count I), and retaliation for engaging in a protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq.* (Count II).  (*Id.*)

---

[1] Plaintiff filed her original Complaint with this Court on March 18, 2024, alleging the same two claims raised in her Corrected Complaint.  (ECF No. 1.)  On March 19, 2024, Plaintiff refiled her Complaint but corrected the case caption to include all Defendants' addresses.  (ECF No. 4.)  For consistency, this Memorandum Opinion refers to Plaintiff's Corrected Complaint (ECF No. 4).
[2]  This Court cites to the ECF generated page number, rather than the page number at the bottom of the parties' submissions.

1

Pending before this Court is Defendant's Motion to Dismiss ("Defendant's Motion") (ECF No. 6).  Sargent has responded in opposition, (ECF No. 12), and Defendant has replied, (ECF No. 13).  The parties' submissions have been reviewed and no hearing is necessary.  Loc. R. 105.6 (D. Md. 2023).  For the reasons set forth below, Defendant's Motion is GRANTED.  Specifically, Count I is DISMISSED WITHOUT PREJUDICE with leave to amend within 15 days of the date of the issuance of a separate Order (i.e., by September 25, 2024), and Count II is DISMISSED WITH PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)).  Except where otherwise indicated, the following facts are derived from Plaintiff's Corrected Complaint (ECF No. 4) and accepted as true for the purpose of Defendant's Motion to Dismiss (ECF No. 6).

Franklin Square is a hospital and medical facility with its main location in Baltimore, Maryland.  (ECF No. 4 ¶ 5.)  Sargent, who is now 68 years old and has been a registered nurse ("RN") for more than twenty years, was an RN at Franklin Square between December 2020 and March 2023.  (*Id.* ¶¶ 4, 7-8, 88.)  Sargent's claims arise from a series of alleged interactions with her supervisor, Kerry Haley-West ("Haley-West"), beginning in July 2021 and culminating in her termination on March 16, 2023.[3]  (*Id.* ¶¶ 12-14, 88.)

---

[3] For clarity, this Court has divided Sargent's allegations by incident and ordered each incident chronologically.

I. **Incident One: Verbal Coaching**

According to Sargent, the first incident of discrimination occurred on or about November 14, 2021, when Haley-West gave her a verbal coaching via email. (*Id.* ¶¶ 25.) Sargent alleges that the verbal coaching was based on vague and ambiguous accusations, including complaints that Sargent (1) gave pushback to charge nurses and flow chiefs; (2) was not a team player; (3) was overly talkative; and (4) "came across as rough." (*Id.* ¶ 25.) In the email, Haley-West wrote that further incidents could result in disciplinary action up to and including termination. (*Id.* ¶ 26.) Sargent alleges that younger nurses were not subject to the same standards. (*Id.* ¶ 28.) According to Sargent, on or about January 31, 2022, two younger nurses engaged in a loud verbal altercation in front of patients. (*Id.* ¶ 29.) Sargent alleges that, although Haley-West knew or should have known of the incident because it was reported to the charge nurse, she never disciplined the two younger nurses. (*Id.* ¶¶ 30-31.)

II. **Incident Two: Email Alleging Inconsistent Care to Patient One**

Sargent next alleges that on or about December 3, 2021, Haley-West sent her an email accusing her of providing inconsistent care to a patient ("Patient One") even though Haley-West knew or should have known that Patient One was under the care of a different nurse when the inconsistent care occurred. (*Id.* ¶ 15.) Specifically, Haley-West wrote that Patient One had accused Sargent of providing insufficient care and an uncaring bedside manner. (*Id.*) In the same email, Haley-West also accused Sargent of failing to (1) properly notate Patient One's medical chart, (2) make a proper medical assessment of Patient One's needs, and (3) give Patient One medications that had been ordered by a physician. (*Id.* ¶¶ 16-18.) According to Sargent, she responded and informed Haley-West that Patient One had been in the care of

3

a daytime nurse when the referenced care occurred. (*Id.* ¶ 19.) Sargent alleges that the daytime nurse, who is not of a protected age under the ADEA,[4] was not subject to any disciplinary or corrective action, but Sargent faced a write-up, discipline, and a Hospital's Notice of Corrective Action due to the allegations. (*Id.* ¶¶ 22-24.)

### III. Incident Three: Notice of Corrective Action Related to Patient Two

Sargent alleges that the next incident of discrimination occurred on March 5, 2022, when Haley-West issued her a write-up and a Hospital Notice of Corrective Action ("NCA") in which she accused Sargent of providing inadequate care to a dementia patient ("Patient Two"). (*Id.* ¶ 33.) According to Sargent, the NCA stated that Patient Two pulled out their own IV, causing a safety concern, and accused Sargent of providing insufficient responsive care. (*Id.* ¶ 35.) Sargent alleges that the NCA used incendiary language by accusing her of failing to document a dressing placed on the patient and stating that there was "blood running down the bed." (*Id.* ¶ 36.) Sargent alleges that dressing Patient Two's wound was within the scope of care of the patient care technician, who was a nursing student in her early twenties. (*Id.* ¶¶ 39, 40.) Sargent alleges that neither the patient care technician nor the numerous other staff—including other nurses and doctors—who failed to respond to Patient Two ever faced disciplinary action for the incident. (*Id.* ¶ 41-44.)

---

[4] The ADEA protects individuals who are at least forty years of age. 29 U.S.C. § 631(a); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) ("[The ADEA] does not ban discrimination against employees because they are aged 40 or older; it bans discrimination against employees because of their age, but limits the protected class to those who are 40 years or older.").

### IV.     Incident Four: Human Resources Report

Sargent alleges that, after the incident with Patient Two, she began to feel discriminated against. (*Id.* ¶ 45.) Therefore, Sargent alleges, she emailed Kim Whittaker ("Whittaker") in Defendant's Human Resources Department ("HR") in February 2022 to report that she was experiencing age discrimination. (*Id.* ¶ 46.) On or about April 7, 2022, Whittaker met with Sargent via Facetime and told her that she did not believe any discrimination had occurred. (*Id.* ¶¶ 48-49.) Sargent alleges that Defendant never investigated her concerns, and Haley-West further discriminated against her by issuing a final written warning. (*Id.* ¶¶ 50, 51.)

Sargent alleges that on May 13, 2022, she filed an HR grievance against Haley-West. (*Id.* ¶ 52.) Sargent alleges that Defendant's Assistant Vice President of Nursing, Kimberly Schwenke ("Schwenke"), investigated and upheld the written warning but never contacted Sargent during her investigation, which lasted one day. (*Id.* ¶¶ 53-55.) According to Sargent, at some point that May, she met with Schwenke and another employee, Kathy Grzeskiewicz ("Grzeskiewicz"), to discuss her concerns.[5] (*Id.* ¶ 56.) Sargent alleges that Whittaker told her to raise her grievance against Haley-West at this meeting, but no HR staff attended the meeting to represent her. (*Id.* ¶¶ 59, 64-65.) Sargent allegedly asked that Schwenke not attend the meeting, but Defendant overruled this request. (*Id.* ¶ 58.) Sargent alleges that Grzeskiewicz shouted at her during the meeting and said she was "so tired of you people." (*Id.* ¶¶ 61-62.) Sargent believed Grzeskiewicz was referencing her age and walked out of the meeting. (*Id.* ¶¶

---

[5] The timeline of Sargent's alleged reports to Defendant's HR Department is somewhat unclear. Sargent alleges that her meeting with Schwenke and Grzeskiewicz occurred on or about May 10, 2022. (ECF No. 4 ¶ 56.) Sargent also alleges, however, that Whittaker encouraged her to use the meeting to address her grievance against Haley-West, which was not filed until May 13, 2022. (*Id.* ¶¶ 59, 53.) Additionally, Sargent does not provide Grzeskiewicz's position or the reason that she was present at the meeting.

63, 98.) Sargent alleges that her counsel sent a demand letter to Defendant raising her concerns, but Defendant took no action in response. (*Id.* ¶¶ 66-67.)

### V. Incident Five: Suspension Related to Patient Three and Termination

Sargent alleges that on January 12, 2023, six days before she was approved to go on short term disability for a scheduled surgery, she received a Notice of Suspension. (*Id.* ¶¶ 68-70.) The Notice of Suspension accused Sargent of "throwing her phone," being loud, using inappropriate language, and striking a patient in restraints, ("Patient Three"). (*Id.* ¶¶ 71-72, 79.) According to Sargent, Patient Three was restrained because they were actively biting nurses, including Sargent. (*Id.* ¶¶ 73-74.) Sargent alleges that she responded to Patient Three's bite as registered nurses are trained to respond, by placing her hands on Patient Three's back and using as little force as possible to push Patient Three out of the bite. (*Id.* ¶¶ 74-75.) Sargent alleges that although her actions followed proper protocol and many younger nurses engage in that same protocol, she was the only nurse suspended for this activity. (*Id.* ¶¶ 76-77, 79.) Similarly, Sargent alleges that younger nurses use inappropriate language and express frustration while on the hospital floor without consequence, and there is no evidence that she threw her phone or used inappropriate language. (*Id.* ¶¶ 81-82.) Finally, Sargent alleges that, unlike younger nurses, she never received the expected duration of her suspension as required in Defendant's policies. (*Id.* ¶¶ 84-85.)

Sargent alleges that she filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 9, 2023. (*Id.* ¶ 86.) According to Sargent, Defendant knew of her EEOC complaint and terminated her seven days later, on March 16, 2023. (*Id.* ¶¶ 87-88.) Sargent alleges that the EEOC issued her a Notice of Right to Sue Letter on February 8,

2024.[6] (*Id.* ¶ 89.) On March 18, 2024, Sargent initiated the instant litigation, filing a two-count Complaint in this Court asserting federal discrimination claims against Defendant. (ECF No. 1.) On March 19, 2024, Sargent filed a Corrected Complaint (ECF No. 4), reasserting her two federal discrimination claims—a claim for discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623 *et seq.* (Count I), and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Count II). (ECF No. 4 at 1.) Defendant Franklin Square filed a Motion to Dismiss (ECF No. 6), and Sargent responded in opposition, (ECF No. 12). This matter is ripe for review.

**STANDARD OF REVIEW**

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (internal quotations omitted).

To survive a motion under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Under the plausibility standard,

---

[6] The EEOC only issues Notice of Right to Sue letters if it is unable to conclude that there is reasonable cause to believe discrimination occurred. If the EEOC had concluded that there was reasonable cause to believe discrimination occurred, the parties would have received Letters of Determination. *See* https://www.eeoc.gov/employers/process.cfm.

a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678; *see A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th. Cir. 2011).

## ANALYSIS

Through her Corrected Complaint (ECF No. 4), Sargent alleges age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 623, *et seq.* (Count I), and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Count II). (*Id.*) Defendant seeks to dismiss both counts for failing to state a claim for relief. (ECF No. 6.) This Court addresses each claim in turn.

### I. Plaintiff's ADEA Claim (Count I)

Franklin Square contends that Sargent fails to plead facts sufficient to allege age discrimination under the ADEA.[7] Specifically, Franklin Square argues that the instances Sargent deems discrimination were appropriate responses to legitimate concerns about her

---

[7] Franklin Square concedes that Sargent is a member of the class protected under the ADEA because she is 68 years old. (ECF No. 6-1 at 9.) As noted *supra*, the ADEA protects individuals aged 40 and older. 29 U.S.C. § 631(a).

8

behavior at work.  (ECF No. 6 at 10.)  Additionally, Franklin Square asserts that Sargent fails to plead specific facts that would support her allegation that younger nurses were not disciplined for engaging in the same conduct for which she faced repeated discipline.  (ECF No. 13 at 1-2.)  In response, Sargent argues that Franklin Square's disciplinary actions against her were pretext for age discrimination.  (ECF No. 12 at 14.)  Sargent emphasizes that she never received any write ups before Haley-West became her supervisor but faced progressive discipline after Haley-West assumed that position.  (*Id.* at 12, 14.)

The ADEA "protect[s] a relatively old worker from discrimination that works to the advantage of the relatively young." *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 591, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004).  To allege a prima facie case of discrimination under the ADEA, a plaintiff must assert that she (1) is a member of the protected class, i.e. is at least 40 years old; (2) suffered an adverse employment action; (3) was meeting her employer's legitimate expectations at the time of the adverse action; and (4) was replaced by or treated less favorably than someone who is either outside the protected class or "substantially younger" than she is. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996); *Hill v. Lockheed Martin Logistics Mgmt.*, 354 F.3d 277, 285 (4th Cir.2004) (en banc) *overruled in part on other grounds by Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009).  If a plaintiff can do this, the burden shifts to the defendant to produce evidence that it took the adverse employment action against the plaintiff "for a legitimate, nondiscriminatory reason." *Id.* at 142 (*citing Tex. Dept. Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).  If the defendant provides such a reason, the burden reverts to the plaintiff to show that the

defendant's explanation is pretextual. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir.1998).

Here, Sargent fails to plead facts sufficient to allege that she was treated less favorably than younger employees. Sargent conclusively states that younger employees were not disciplined for similar behaviors but alleges only one specific instance in which younger employees were loud in front of patients without facing the same discipline as Sargent. Sargent fails to raise specific allegations that younger nurses engaged, without repercussion, in any of the other behaviors—for example, giving pushback to charge nurses, pushing a patient out of a bite, or failing to properly notate a patient's medical chart—for which she was allegedly disciplined. Because Sargent alleges progressive discipline in response to a variety of behaviors involving fellow staff members and patients, a single allegation of younger nurses escaping discipline for one similar behavior is insufficient to support her claim of age discrimination.

Sargent's bare assertions that she was treated differently than younger nurses fall short of the plausibility requirement the Supreme Court imposed in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Therefore, Defendant's Motion is GRANTED as to Count I, and Count I is DISMISSED WITHOUT PREJUDICE.[8]

## II.   Plaintiff's Title VII Claim (Count II)

Defendant contends that Sargent's Title VII claim should be dismissed because she fails to allege that she engaged in activity protected under Title VII and failed to exhaust her

---

[8] As further detailed *infra* and in the separate Order, Count I of Plaintiff's Corrected Complaint (ECF No. 4) is DISMISSED WITHOUT PREJUDICE with leave to Plaintiff Sargent to file an Amended Complaint within fifteen days of this Order, i.e., by September 25, 2024.

administrative remedies before filing this action.⁹  Defendant argues that Sargent's retaliation claim must be dismissed because Title VII does not protect against age discrimination.  (ECF No. 6 at 10; ECF No. 13 at 4.)  In response, Sargent seems to argue that her retaliation claim falls under the ADEA, but the plain language of her Complaint alleges that her reports of age discrimination to supervisors, demand letter, and EEOC Complaint raising age discrimination were all protected activity under Title VII.  (ECF No. 4 ¶ 106.)

"Title VII prohibits employment discrimination based on race, color, religion, sex, or national origin—not age—and prohibits retaliation against anyone who opposes *those* practices or makes a charge of discrimination in violation of *Title VII*."  *Faulconer v. Centra Hlth., Inc.* 808 Fed. App'x 148, 153 (4th Cir. 2020) (emphasis in original); *see also Gen. Dynamics Land Sys., Inc.*, 540 U.S. 581, 586 (2004) ("Congress chose not to include age within discrimination forbidden by Title VII."); *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996) ("Title VII and ADEA claims arise from completely distinct statutory schemes.").  Accordingly, to establish a claim of retaliation under Title VII, a plaintiff must show (1) that she engaged in a protected activity, (2) that her employer took a "materially" adverse action against her, and (3)

---

⁹ Under Title VII, a claimant must exhaust her administrative remedies by filing a charge with the EEOC before instituting civil action.  42 U.S.C. § 2000e-5(b), (f); 29 U.S.C. § 633a(d).  *See also Walton v. Harker*, 33 F.4th 165, 172 (4th Cir. 2022) ("It is well settled that before filing suit under Title VII or the ADEA, a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC.").  Once a claimant has filed a complaint with the EEOC, any subsequent civil litigation is limited to the facts and theories of liability raised in or reasonably related to that EEOC complaint.  *Harker*, 33 F.4th at 172.  Where a claimant alleges retaliation for the act of filing the EEOC complaint, however, there is no such administrative exhaustion requirement.  *See Riley v. Tech. & Mgmt. Servs. Corp.*, 872 F. Supp. 1454, 1460 (D. Md. 1995) *aff'd sub nom. Riley v. Tech. & Mgmt. Servs. Corp.*, 79 F.3d 1141 (4th Cir. 1996).  Accordingly, unless a claimant is alleging retaliation for the act of filing an EEOC complaint, she may only raise retaliation claims under Title VII in a civil action if she also raised those claims to the EEOC.  Here, Franklin Square contends that Sargent failed to raise any retaliation claims in her EEOC complaint, and it only became aware of her EEOC complaint after it terminated her employment.  The Court need not reach these arguments, however, because, as discussed *infra*, Title VII does not protect against age discrimination.  *See* 42 U.S.C. § 2000e-2(a) (prohibiting employers from discriminating against an individual "because of such individual's race, color, religion, sex, or national origin").

that a causal connection existed between the activity and the adverse action. *Cepada v. Bd. of Educ. of Baltimore Cnty.*, 814 F. Supp. 2d 500, 514 (D. Md.2011) (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536, 543 (4th Cir. 2003)). Because it does not protect against age discrimination, "Title VII does not prohibit retaliation for complaining about *age* discrimination." *Faulconer*, 808 Fed. App'x at 153 (emphasis in original).

Accordingly, Sargent's retaliation claim here must fail because she cannot meet the first element of a retaliation claim under Title VII. That is, she cannot show that she engaged in protected activity under Title VII. Neither Sargent's EEOC complaint nor her filings in this Court allege discrimination based on race, color, religion, sex, or national origin. Because Sargent alleges only age discrimination, she cannot meet the first element of a retaliation claim under Title VII.

Therefore, Defendant's Motion is GRANTED as to Count II, and Count II is DISMISSED WITH PREJUDICE.

## CONCLUSION

For the reasons stated above, Defendant Franklin Square Hospital Center Inc. d/b/a Medstar Franklin Square Medical Center's Motion to Dismiss (ECF No. 6) shall be GRANTED. Plaintiff Susan B. Sargent's Complaint (ECF No. 4) is DISMISSED pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. Generally, leave to amend a complaint to address deficiencies in the original complaint is freely given pursuant to Rule 15(a). Indeed, there is authority that a plaintiff should be given at least one opportunity to amend a complaint before dismissal of a case with prejudice. *See Harvey v.*

*CNN, Inc.*, 520 F. Supp. 3d 693, 725 (D. Md. 2021) (citing *Silva v. Bieluch*, 351 F.3d 1045, 1048 (11th Cir. 2003)). However, there is authority that leave to amend does not need to be granted unless requested by the plaintiff. *Id.* (citing *Cent. Laborers' Pension Fund v. Integrated Elec. Servs. Inc.*, 497 F.3d 546, 555–56 (5th Cir. 2007)). Nevertheless, leave to amend may be denied if such amendment is deemed futile. *Goode v. Cent. Va. Legal Aid Soc'y, Inc.*, 807 F.3d 619, 624 (4th Cir. 2015).

While Plaintiff's Title VII claim (Count II) is DISMISSED WITH PREJUDICE, this Court deems it prudent to afford Plaintiff the opportunity to amend her complaint with respect to her ADEA claim (Count I). As noted above, Sargent has failed to plausibly claim she was subjected to employment terms and conditions to which younger nurses were not. Nevertheless, Sargent may file an Amended Complaint within fifteen days of this Opinion, i.e., by September 25th, 2024. Such an Amended Complaint may still be subject to dismissal by reason of repeated failure to cure deficiencies or futility of the amendment. *Harvey*, 520 F. Supp. 3d at 725 (citing *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008)). Accordingly, the DISMISSAL of Count I will initially be WITHOUT PREJUDICE. If an Amended Complaint is not filed by September 25th, 2024, the Clerk of this Court is instructed to CLOSE this case with DISMISSAL WITH PREJUDICE.

A separate Order follows.

Dated: September 10th, 2024    /s/ _____

Richard D. Bennett
United States District Judge